IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

TYREE STEWART,                            )
                                          )
                Plaintiff                 )     NO. 1:25-CV-00138
                                          )
        vs.                               )     RICHARD A. LANZILLO
                                          )     Chief United States Magistrate Judge
                                          )
TERI MASI, LPN; JOHN DOE(S); and          )
ARMOR HEALTH OF ERIE COUNTY               )     MEMORANDUM OPINION ON
LLC,                                      )     DEFENDANTS TERI MASI, LPN AND
                                          )     ARMOR HEALTH'S MOTION TO
                Defendants                )     DISMISS AMENDED COMPLAINT
                                          )
                                          )     ECF NO. 19
                                          )

I.      Introduction

        While the Eighth Amendment does not require perfection in prison healthcare

services, it does not countenance conscious neglect of an inmate's medical needs.

Plaintiff, an individual living with HIV, alleges he notified prison medical officials at

the beginning of his confinement that he was allergic to a drug they proposed to

administer to him, but they nevertheless forced him to receive it.  His allegations

support plausible findings that transcend negligence and rise to the threshold

necessary to support a violation of his rights under the Eighth or Fourteenth

Amendment.  Accordingly, the moving Defendants' motion to dismiss Plaintiff's

Amended Complaint will be denied.[1]

_____

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C.
§ 636(c).

II.    Relevant Procedural History

Plaintiff Tyree Stewart's Amended Complaint is his operative pleading.  ECF No. 4.  It names Teri Masi, LPN and Armor Health of Erie County LLC, and a nurse identified as "John Doe" as Defendants.  The Amended Complaint asserts two counts: Count I, a deliberate indifference to medical needs claim under 42 U.S.C. § 1983 against Masi and the Doe Defendant, and Count II, a professional negligence claim under Pennsylvania law against all Defendants, including Armor Health based on vicarious liability.  ECF No. 4, ¶¶ 31–55.  Defendants Masi and Armor Health ("Moving Defendants") have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Count I on the grounds that the Amended Complaint fails to allege facts sufficient to support a § 1983 claim against Masi and, alternatively, that qualified immunity shields Masi from this claim.  They further assert that Stewart is barred from bringing his claims because he did not first exhaust his administrative remedies at the Erie County Prison ("ECP").  Finally, Moving Defendants argue that the facts alleged do not support vicarious liability against Armor Health at Count II of the Amended Complaint and, alternatively, they urge the Court to decline to exercise supplemental jurisdiction over Stewart's state law claim at Count II.[2]  Defendants' motion has been fully briefed and is ripe for disposition.

---

[2] The Moving Defendants raise no argument regarding the claims against the John Doe Defendant other than asserting that Armor Health cannot be vicariously liable based on the alleged conduct of the John Doe Defendant.

III.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must, under Federal Rule of Civil Procedure 8(a)(2), contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). In other words, the plaintiff must allege facts sufficient "to raise a right to relief above the speculative level" and "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 555, 570. Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).

In deciding a Rule 12(b)(6) motion, the Court accepts as true the complaint's well-pleaded factual allegations and examines them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). However, the Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotations and citations omitted); *see Iqbal*, 556 U.S. at 678. The Court's focus is simply whether the challenged claims should be allowed to move forward, not whether the plaintiff will ultimately prevail on his claims. *See Twombly*, 550 U.S. at 563 n.8. Further, when deciding the motion to dismiss, "a court must consider only the complaint, exhibits

3

attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

IV.    Material Allegations of Fact

The following factual allegations of Stewart's Amended Complaint are accepted as true for purposes of Defendants' motion. Stewart has been HIV-positive since 2011. ECF No. 4, ¶ 10. Approximately four months before Stewart came into the custody of ECP, his physician, Dr. Morgan Morelli, discontinued his HIV medication, Symtuza, because Stewart suffered a documented allergic reaction (a painful rash) to that drug. *Id.* ¶ 11. Dr. Morelli transitioned Stewart to Cabenuva, an injectable medication administered every eight weeks. *Id.* Stewart had received his most recent Cabenuva injection on April 12, 2024, four days before he arrived at ECP. *Id.* ¶ 12. His next dose was not due until June 2024, after he was scheduled to be released from ECP.

When Stewart arrived at ECP on April 16, 2024, he executed medical release forms authorizing ECP to obtain his medical records from Dr. Morelli and Metro Health in Cleveland, Ohio. *Id.* ¶ 13. Defendant Teri Masi, LPN, an employee of Armor Health, performed Stewart's nursing intake health screening. *Id.* ¶¶ 14–15. During that screening, Masi asked Stewart whether he had any drug allergies. *Id.* ¶ 16. Stewart informed her that he was allergic to Symtuza. *Id.* He further advised Masi that his treating physician had instructed him not to take Symtuza and that he was currently prescribed an entirely different medication. *Id.* ¶ 17. Masi nevertheless

entered "NKMA" (no known medication allergies) in Stewart's chart and recorded that he was currently taking Symtuza and had received his last dose the prior evening. *Id.* ¶¶ 16–17. In fact, Stewart had not taken Symtuza since December 2023, and combining that drug with his current medication was not medically recommended. *Id.* ¶¶ 17–18. ECP never sent Stewart's outside medical providers the authorization for release of medical records that he signed at intake; therefore, no one at ECP reviewed Stewart's HIV treatment history. *Id.* ¶ 19. Relying on Masi's chart, Nurse John Doe later presented Stewart with two 800mg Symtuza tablets and directed him to take them. *Id.* ¶ 20. Stewart objected, advising that the medication was life-threatening due to his allergy and reminding the nurse that he had signed a records release form that could be used to verify his medical history. *Id.* ¶ 21. Rather than consulting Stewart's outside records, Nurse John Doe threatened Stewart with placement on suicide watch and OC spray deployment until he complied. *Id.* ¶ 22. Stewart nonetheless refused. A corrections officer thereafter deployed OC spray on him. *Id.* ¶ 24. Under continuing coercive threats, Stewart acceded and took Symtuza daily for the remainder of his thirty-day sentence. *Id.* ¶ 25.

Within approximately three days of taking the medication, Stewart developed a severe, painful, and bloody rash across his chest, back, and face, the precise allergic reaction that had caused Dr. Morelli to discontinue Symtuza months earlier. *Id.* ¶ 26. Despite the emergence of a visible rash, nursing staff continued to force Stewart to take the medication and refused to provide him any further medical treatment. *Id.*

¶¶ 28–30.  Stewart's severe, bloody rash continued for approximately twenty-seven days and was accompanied by significant pain, anxiety, and humiliation.  *Id.* ¶ 41.

V.    Moving Defendants' Motion to Dismiss

Moving Defendants advance four principal arguments in support of their motion to dismiss: (1) the Amended Complaint fails to allege facts sufficient to state an Eighth Amendment deliberate indifference claim against Masi because her alleged role was limited to completing an intake health screening and she is not alleged to have personally administered Symtuza to Stewart or compelled Stewart to take Symtuza (ECF No. 20, at 3-5); (2) Masi is shielded from liability by qualified immunity (*Id.* at 5-6); (3) the Amended Complaint fails to state a vicarious liability negligence claim against Armor Health (*see id.* at 7); and (4) Stewart failed to properly exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) (*id.* at 6-7).  Moving Defendants further argue that because Stewart's federal claim fails, the Court should decline to exercise supplemental jurisdiction over the state law professional negligence claim under 28 U.S.C. § 1367(c) (*see id.* at 8).

VI.    Discussion and Analysis

A.    The Amended Complaint states a deliberate indifference to medical needs claim against Masi.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts to support that a person acting under color of state law deprived the plaintiff of a right, privilege,

or immunity secured by the Constitution or laws of the United States.[3] *See West v. Atkins*, 487 U.S. 42, 48 (1988). Stewart claims that Masi and the John Doe Defendant acted with deliberate indifference to his serious medical need—specifically, his allergy to Symtuza—and thereby violated his rights under the Eighth or Fourteenth Amendment.[4] Moving Defendants argue that this claim fails against Masi because she was not directly involved in dispensing Symtuza to Stewart. *See* ECF No. 20, at 4. This argument misconstrues the conduct upon which Stewart bases his claim and the effect that conduct had on his health.

Stewart alleges that Masi falsely recorded that he had no known medication allergies despite his having notified her that he had an allergy to Symtuza, that his treating physician had instructed him not to take Symtuza, and that he was currently prescribed an entirely different medication. ECF No. 4, ¶¶ 16–17. Stewart further alleges that the John Doe Defendant, relying on the false information that Masi

---

[3] Moving Defendants do not presently dispute Masi's status as a "state actor" under § 1983, and the allegations of the Amended Complaint support this status. The Amended Complaint alleges that Erie County "contracted with Armor Health … to provide comprehensive health services to inmates at ECP" and that Armor Health employed both Masi and the John Doe defendant. ECF No. 4, ¶¶ 2-4. *See Martin v. Sec'y of Corr.*, 2017 WL 3887968, at *4 (M.D. Pa. Sept. 5, 2017) ("Although [defendant] was employed by a private healthcare provider, she was providing services at a state prison within prison confines, and thus was acting under color of state law for the purposes of a § 1983 claim."); *Heath v. Wakefield*, 2026 WL 579506, at *8 (M.D. Pa. Mar. 2, 2026) (citing *West*, 487 U.S. at 54 (finding medical personnel "employed by [a state] to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983").

[4] It is unclear whether Stewart was a pretrial detainee or serving a sentence after conviction when he was housed at the ECP. The Eighth Amendment applies to convicted inmates and extends its prohibition of cruel and unusual punishment to prison officials' "deliberate indifference" to an inmates' "serious medical needs." *See Estelle v. Gamble*, 429 U.S. 97 (1976). Pretrial detainees' constitutional protections regarding medical care are grounded in the Due Process Clause of the Fourteenth Amendment, which prohibits a detainee from being punished prior to an adjudication of guilt. *See Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)). As discussed *infra*, the Court need not determine Stewart's status while he was confined at ECP because his Amended Complaint is sufficient to state a claim under both the Eighth and Fourteenth Amendments.

recorded, required Stewart to take the Symtuza. *Id.* ¶¶ 21-22. Under § 1983, the facts alleged must demonstrate the personal involvement of each named defendant in the alleged constitutional deprivation; liability may not be predicated solely on a theory of respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Accordingly, each defendant's liability must be assessed individually and, as to each defendant, the facts must show that the defendant's own conduct—not the conduct of others—caused or contributed to the constitutional harm. *Rode*, 845 F.2d at 1207. Here, Stewart's claim against Masi is based on her conduct in setting in motion the process that led to his constitutional injury. While Moving Defendants may argue that Stewart's allegations are not sufficient to support causation or some other element of the claim against Masi, they unquestionably satisfy the threshold requirement of personal involvement. Analysis of the substantive elements of the claim follows.

As noted, it is unclear whether Stewart was a pretrial detainee or an inmate serving a post-conviction sentence of incarceration when he was confined at ECP. If the former, his relevant constitutional protection is found in the Fourteenth Amendment's prohibition against punishment before adjudication of guilt in accordance with due process. *See Hubbard*, 399 F.3d at 158. If Stewart was serving a sentence of incarceration, the Eighth Amendment's prohibition of cruel and unusual punishment governs. *See Estelle v. Gamble*, 429 U.S. 97 (1976). Although case law does not precisely define when inadequate medical care rendered to a pretrial detainee constitutes "punishment," it is well-established that "the Fourteenth

Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Whether the claim is under the Eighth or the Fourteenth Amendment, courts recognize that a claim is stated where the plaintiff alleges facts to support plausible inferences that (1) the plaintiff had a serious medical need, and (2) prison or jail officials acted with deliberate indifference to that need. *See Natale*, 318 F.3d at 582; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). This claim thus has an objective element—the existence of a serious medical need—and a subjective element—the defendant's sufficiently culpable state of mind. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).

Moving Defendants do not presently dispute that Stewart's HIV medication needs and his associated allergy to Symtuza represent a serious medical need. They instead challenge the sufficiency of the facts alleged to support the subjective "deliberate indifference" element of the claim. A prison official acts with deliberate indifference to a prisoner's medical needs when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Courts have found deliberate indifference to be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir.

9

1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

The factual allegations of the Amended Complaint support a plausible inference that Masi disregarded Stewart's warning regarding his Symtuza allergy and falsely recorded that he had no known medication allergies. Masi is thus alleged to have known of and disregarded the excessive risk Stewart's taking of Symtuza presented to his health. The allegations also support an inference that Masi understood that others were likely to rely on the information she inaccurately recorded, and that such reliance could be expected to expose Stewart to a serious risk to his health. Alternatively, the facts alleged can be construed as Masi having denied Stewart his properly prescribed medical treatment and a reasonable request for appropriate treatment, which denial resulted in suffering or risk of injury. Examined from either perspective, the facts alleged support a finding of deliberate indifference.[5] *See Durmer*, 991 F.2d at 68; *Davis v. Williams*, 1988 WL 26998, at *1 (E.D. Pa. Mar. 17, 1988) ("Assuming plaintiff was given a drug to which he is allergic, despite repeatedly telling the medical personnel that he was allergic, he may state a claim for 'deliberate indifference to serious medical needs.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Santiago v. Gilbert*, No. 20-CV-687-PP, 2022 WL 4448937, at *6

---

[5] The foreseeable and direct impact of Masi's alleged intentional omission of Stewart's medication allergy distinguishes this case from those where inmates asserted claims based on alleged falsification of medical records alone. *See Harris v. Pennsylvania Dep't of Corr.*, 2014 WL 941351, at *5 (E.D. Pa. Mar. 11, 2014) (holding that falsification of medical records by prison medical staff alone does not support a deliberate indifference to medical needs claim absent an adverse health impact on the inmate); *Johnson v. Korszniak*, 2023 WL 3510892, at *10 (E.D. Pa. May 17, 2023) (discussing *Harris* and dismissing claim because plaintiff "does not allege how this falsification affected his medical treatment").

(E.D. Wis. Sept. 23, 2022) (causing inmate to receive a medication to which prison personnel know he is allergic supports a finding of deliberate indifference). Although the facts alleged may also support a plausible inference that Masi's incorrect notation was the result of mere negligence, at this stage of the case, all reasonable inferences must be made in favor of Stewart.

Finally, under this favorable standard of review, the Amended Complaint also supports a finding that Masi's conduct had "a causal link to, and direct responsibility for, the deprivation of rights" under § 1983. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). *See also Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). Defendants may argue that Masi's recording of inaccurate medical information in Stewart's records ceased to be a proximate cause of Stewart's injury when Stewart notified the John Doe Defendant of his medication allergy and he nevertheless insisted that Stewart take the Symtuza. Whether events between a defendant's actionable conduct and the plaintiff's injury constitute a superseding cause of the injury is a question of law for the Court. *See Giovanelli v. D. Simmons Gen. Contracting*, No. CIV.A. 09-1082 NLH, 2011 WL 2470591, at *4 (D.N.J. June 17, 2011). But issues of fact often must be resolved before the Court can properly determine this question of law. *See In re Neurontin Antitrust Litig.*, No. 02-1390 FSH, 2013 WL 4042460, at *10 (D.N.J. Aug. 8, 2013) (holding that issues of fact remained to be resolved before the court could determine whether intervening causes broke the causal link between the challenged conduct); *In re Flonase Antitrust Litig.*, 798 F. Supp. 2d 619, 633 (E.D. Pa. 2011) (same) *Donnelly v. Gen. Elec. Co.*, No. 2:22-CV-00377-MJH, 2025 WL 3041822, at *6

11

(W.D. Pa. Oct. 31, 2025) (same, apply Pennsylvania law), *reconsideration denied*, No. 2:22-CV-00377-MJH, 2025 WL 3203085 (W.D. Pa. Nov. 17, 2025), *and motion to certify appeal denied*, No. 2:22-CV-00377-MJH, 2025 WL 3693623 (W.D. Pa. Dec. 19, 2025), *and motion to certify appeal denied*, No. 2:22-CV-00377-MJH, 2025 WL 3693623 (W.D. Pa. Dec. 19, 2025). Here, these preliminary issues of fact include the extent to which the John Doe Defendant relied on Masi's "NKMA" notation and the precise substance of the information Stewart conveyed to Masi and the John Doe Defendant.

### B.    Qualified Immunity

Moving Defendants argue that qualified immunity shields Masi from Stewart's deliberate indifference claim. ECF No. 20. at 5. Masi is not a government employee; she is an employee of Armor Health, a private, for-profit healthcare contractor that provided medical services at ECP pursuant to a contract. ECF No. 4 ¶ 3. Precedent suggests that qualified immunity does not extend to private party employees performing government functions. In *Richardson v. McKnight*, the Supreme Court held that private prison guards employed by a for-profit management company are not entitled to qualified immunity. 521 U.S. 399, 412 (1997). The Court reasoned that the historical and functional rationales underlying the doctrine—principally, protecting government officials who must make difficult decisions in the public interest—do not translate to private actors.[6] *Id.* at 407–12.

---

[6] In *Filarsky v. Delia*, 566 U.S. 377 (2012), the Supreme Court acknowledged a narrow exception for private individuals who are temporarily engaged by the government to assist government employees in accomplishing a specific task. *See also Abu-Jamal v. Kerestes*, 2021 WL 4132417, at *11 n.10 (M.D. Pa. Sept. 9, 2021) (discussing *Richardson* and *Filarsky*); *Thompson v. Ferguson*, 2020 WL 7872629, at

Although the Court of Appeals for the Third Circuit has not definitively resolved whether *Richardson* categorically bars qualified immunity for private prison medical contractor employees, the reasoning in *Richardson* and the weight of authority across this and other circuits counsels against extending that protection to a person in Masi's position. *See Daly v. Pennsylvania Dep't of Corr.*, 2024 WL 4480103, at *20 n.19 (W.D. Pa. Aug. 7, 2024), *report and recommendation adopted*, 2024 WL 4284680 (W.D. Pa. Sept. 25, 2024) (noting in *dicta* that the weight of authority within this Circuit and elsewhere rejects the availability of qualified immunity to private parties providing services to prisoners under contract) (citing *Hasher v. Hayman*, 2013 WL 1288205, at *9 (D.N.J. Mar. 27, 2013) (medical doctors); *McCullum v. Tepe*, 693 F.3d 696 (6th Cir. 2012) (rejecting qualified immunity for private psychiatrist providing services to inmates as employee of a private entity); *Tapp v. Proto*, 718 F. Supp. 2d 598, 612 n.10 (E.D. Pa. 2010) (food services staff).

Furthermore, even if Masi's status as a private employee performing a government function allows her to raise qualified immunity as a defense, it would not shield her under the allegations of the Amended Complaint. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

---

*13 (E.D. Pa. Dec. 31, 2020). But the facts alleged in the Amended Complaint do not support an inference that Masi was temporarily engaged to assist ECP employees in the performance of a specific task. The exception therefore does not appear to apply to her circumstances.

818 (1982)).  "The burden of establishing qualified immunity falls to the official claiming it as a defense." *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011). *See also, Harris v. Kellogg, Brown & Root Servs., Inc.*, 2016 WL 4720058, at * 1 (W.D. Pa. Sept. 9, 2016) (noting that the defendant "has the burden of proof on its affirmative defense of qualified immunity").  On a motion under Rule 12(b)(6), qualified immunity will be upheld "only when the immunity is established on the face of the complaint." *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir.2001)).

The qualified immunity defense is traditionally analyzed in two prongs: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, make out the violation of a constitutional or statutory right; and (2) whether the right at issue was "clearly established" at the time of the challenged conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Court has already determined that the allegations of the Amended Complaint state an Eighth or Fourteenth claim against Masi based on deliberate indifference to Stewart's serious medical need.  In determining whether this right was clearly established when Masi falsely recorded that Stewart had no known medication allergies, the Court "must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citations omitted).  Thus, courts must resist the temptation to define "clearly established law at a high level of generality." *Id.*  "Rather, the right at issue must be framed 'in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition.'" *Estep v. Mackey*, 639 Fed. Appx.

14

870, 873 (3d Cir. 2016) (quoting *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015)). Once the court has identified the asserted right or rights at the appropriate level of specificity, it then looks first to Supreme Court decisions to determine whether the right was clearly established at the time of the conduct at issue. *See Mammaro v. N.J. Div. of Child Protection and Permanency*, 814 F.3d 164, 169 (3d Cir. 2016). Absent factually similar Supreme Court precedent, a court may rely on a "robust consensus of cases of persuasive authority' in the Court[s] of Appeals." *Taylor v. Barkes*, 575 U.S. 822, 826 (2015) (per curiam).

As discussed, Stewart's claim against Masi essentially asserts that she knowingly or recklessly caused Stewart to receive a medication to which he was allergic rather than his specifically prescribed HIV medication. The right of inmates not to have prison personnel deliberately disregard their medication needs was well-established by a robust consensus of persuasive decisions of the courts of appeals as of the time of Masi's alleged conduct. *See e.g.*, *Hudson v. McHugh*, 148 F.3d 859, 861 (7th Cir. 1998) (recognizing right where, during his intake interview at the jail, plaintiff informed officers that he was epileptic and needed anti-convulsion medication daily but jail personnel failed to provide it); *Wynn v. Southward*, 251 F.3d 588, 590–91 (7th Cir. 2001) (recognizing right where inmate was denied necessary heart medication); *Egebergh v. Nicholson*, 272 F.3d 925, 927 (7th Cir. 2001) (recognizing right where the plaintiff informed the booking officer that he was an insulin-dependent diabetic and the booking officer noted this on his lock-up sheet but he was not provided medication); *Phillips v. Jasper County Jail*, 437 F.3d 791, 795–

15

96 (8th Cir. 2006) (denying summary judgment to jail employees on a deliberate indifference claim for failing to administer the plaintiff his prescribed dosage of anti-seizure medication) ; *Butler v. Anakalea*, 472 Fed. Appx. 506, 507 (9th Cir. 2012) (denying summary judgment where staff was aware plaintiff complained of kidney stone and requested pain medication but failed to provide any).    This robust consensus of appellate authority would have placed an individual in Masi's position on notice that knowingly mis-recording medication information in a detainee's medical record under circumstances that exposed the detainee to a serious risk of harm violated the detainee's rights under the Eighth or Fourteenth Amendment. Therefore, even if qualified immunity may be raised by a private medical provider performing services at a prison or jail, it does not shield Masi under the facts alleged in this case.

C.    Count II—Professional Negligence[7]

Count II asserts a state law professional negligence claim against Masi and Nurse John Doe based on their involvement in Stewart's care, and against Armor Health based on its alleged employment of these individuals.    Under Pennsylvania law, the elements of a professional negligence claim are: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) a causal relationship between the breach and the plaintiff's injury, and (4) damages. *See Quinby v. Plumsteadville Fam. Prac., Inc.*, 907 A.2d 1061, 1070–71 (Pa. 2006).    A breach of a medical

---

[7] Moving Defendants argue that the Court should decline to exercise supplemental jurisdiction over Count II. This argument is premised on their position that Stewart's only federal claim (Count I) is subject to dismissal. Having determined that Count I states a claim under §1983, the Court retains supplemental jurisdiction over Count II under 28 U.S.C. § 1367.

16

professional's duty exists where the defendant failed to conform to the applicable standard of care. *See* 40 P.S. § 1303.512.

In this case, Stewart alleges that Masi and the Doe Defendant breached their duty of care by: (1) inaccurately recording that he had no known medication allergies when he specifically notified them of his allergy to Symtuza, (2) failing to document Stewart's allergy during the intake interview, (3) failing to obtain and review Stewart's available medical records to verify his treatment history, (4) dispensing and requiring Stewart to take a medication to which he was allergic, and (5) failing to discontinue the medication once Stewart manifested an allergic reaction. ECF No. 4 ¶¶ 48-52. These averments are factual and support plausible inferences that Masi and the John Doe Defendant deviated from the applicable standard of care.

The individual Defendants' deviations from the standard of care, in turn, support respondeat superior liability against Armor Health. Under Pennsylvania law, an employer is vicariously liable for the negligent acts of its employees committed within the scope of their employment. *See Shuman Estate v. Weber*, 419 A.2d 169, 172 (Pa. Super. 1980). The Amended Complaint alleges that Armor Health was contracted to provide medical services at ECP and that it employed Masi and the Doe Defendant when they deviated from the applicable standard of medical care. ECF No. 4 ¶¶ 2–3. These allegations support Armor Health's vicarious liability.

D.  PLRA Exhaustion

Finally, Defendants argue that this action must be dismissed because the Amended Complaint does not affirmatively allege that Stewart exhausted

17

administrative remedies as required Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).    This argument is without merit.    Failure to exhaust administrative remedies is a non-jurisdictional affirmative defense that a defendant must plead and prove.   *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Accordingly, a plaintiff has no obligation to preemptively plead facts to negate a defendant's exhaustion defense.   *Id.* (holding that "inmates are not required to specially plead or demonstrate exhaustion in their complaints").   Dismissal at the Rule 12(b)(6) stage is appropriate only if the failure to exhaust is apparent from the face of the complaint itself.   *Spruill*, 372 F.3d at 223; *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013).   The Amended Complaint includes no admission or concession of any failure to exhaust administrative remedies or allege facts from which the Court can discern any failure by Stewart to exhaust.[8]

## VII.   Conclusion

For the foregoing reasons, Defendants Masi and Armor Health's Motion to Dismiss (ECF No. 19) will be DENIED.   An order follows separately.

Entered this 6th day of July, 2026.

---

[8] It is also not clear that the PLRA exhaustion requirement applies to Stewart. "It is the plaintiff's status at the time he files suit that determines whether § 1997e(a)'s exhaustion provision applies." *Blades v. Brushaw*, 2011 WL 5509413, at *3 (W.D. Pa. Nov. 10, 2011) (citing *Norton v. City of Marietta*, 432 F.3d 1145, 1150, (10th Cir.2005) (citing *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir.2005); *Ahmed v. Dragovich,* 297 F.3d 201, 210 (3d Cir. 2002)). A prisoner who has been released from custody on the date he files his lawsuit is filed is not required to exhaust prison administrative remedies. PLRA. *See Ahmed*, 297 F.3d at 210 n. 10 ("[E]very court of appeals to have considered the issue has held that the PLRA does not apply to actions filed by former prisoners."). The Amended Complaint indicates that Stewart may have been released from custody when he filed that pleading. *See, e.g.*, ECF No. 4 ¶ 30 ("While he was at the Erie County Prison ....").

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE